**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL B.,**

                                        **Plaintiff,**

        **vs.**

                                                                **5:20-CV-303**
                                                                **(MAD)**

**ANDREW SAUL,** *Commissioner of*
*Social Security*,

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**MICHAEL B.**
Plaintiff *Pro se*

**SOCIAL SECURITY ADMINISTRATION**        **MICHAEL L. HENRY, ESQ.**
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff, Michael B., commenced this action on March 18, 2020, pursuant to 42 U.S.C. §§

405(g) and 1383(c), seeking review of a decision by the Commissioner of Social Security denying

Plaintiff's application for Social Security Disability Insurance ("SSDI").  *See* Dkt. No. 1.  On

January 9, 2017, Plaintiff filed an application for disability insurance benefits, alleging an onset

date of September 4, 2015. *See* Administrative Transcript ("Tr.") at 144-150. Plaintiff's

application was denied and he filed a timely request for a hearing before an Administrative Law

Judge ("ALJ"). *See id.* at 69-80, 91-92. A hearing was held before ALJ Robyn L. Hoffman on

October 31, 2018. *See id.* at 41-68. On December 11, 2018, the ALJ issued a decision denying

Plaintiff's application. *See id.* at 12-22. Plaintiff subsequently requested review by the Appeals

Council and was denied such review. *See id.* at 1-5. Presently before the Court are the parties'

cross-motions for judgment on the pleadings. *See* Dkt. Nos. 19, 22.

## II. BACKGROUND

In September 2015, Plaintiff reportedly injured his back at work while lifting a case of

frozen pizza. Tr. at 47-48, 171, 220. When Plaintiff reported to the emergency room a few days

later for back pain, he did not mention his injury and had a normal examination. *Id*. at 209-11,

213-15. On September 14, 2015, Plaintiff was seen at Syracuse Orthopedic Specialists

(hereinafter "SOS"). *Id*. at 241-43. Physician's Assistant Melissa Cullinan recorded that Plaintiff

was in great discomfort and had requested the use of a wheel chair. *Id*. at 241. Ms. Cullinan

opined that Plaintiff was suffering from a herniated disc and ordered an MRI. *Id*.

An MRI on September 22, 2015, revealed a small herniated disc at L5-S1. *Id*. at 253. Just

two months after Plaintiff's alleged onset date, on November 6, 2015, Plaintiff reported to Nurse

Practitioner Caroline Berrios that his pain was currently a two out of ten and averaged at five out

of ten. *Id*. at 349. Despite Plaintiff's continued requests for pain medication and reports of pain,

Plaintiff's back responded greatly to physical therapy, massage therapy, and yoga. *Id*. at 51, 273,

279-81, 289, 303, 322.  Six months after applying for SSDI, Plaintiff returned to full-time, light

work.  *Id*. at 171, 183-88.

## III. DISCUSSION

**A.      Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  There is a five-step analysis for evaluating

disability claims:

> "In essence, if the Commissioner determines (1) that the claimant
> is not working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one [listed in Appendix 1 of the regulations]
> that conclusively requires a determination of disability, and (4)
> that the claimant is not capable of continuing in his prior type of
> work, the Commissioner must find him disabled if (5) there is not
> another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)) (other citation omitted).  "The claimant bears the burden of proof on

the first four steps, while the Social Security Administration bears the burden on the last step."

*Id.* (citation omitted).

In reviewing a final decision by the Commissioner under Title 42, United States Code

Section 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C.

§§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Court must examine the Administrative Transcript to ascertain whether the

correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

**B.    The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 4, 2015, the alleged onset date, and July 2017, when he returned to work.  *See* Tr. at 17.  At step two, the ALJ concluded that Plaintiff had the following severe impairments: post-traumatic lumbosacral degenerative disc disease ("DDD") with a herniated disc and radiculopathy.  *See id.*  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 18.  The ALJ then found that Plaintiff "has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)."  *Id*.

At step four, the ALJ found that Plaintiff could not perform any past relevant work.  *See id*. at 21.  At the fifth and final step of the analysis, the ALJ determined that, since Plaintiff could perform a full range of light work, a substantial number of jobs in the national economy existed that Plaintiff could perform.  *See id*.  Thus, the ALJ determined that Plaintiff is not disabled as defined by the Social Security Act.  *See id*.

**C.    Analysis**

Plaintiff fails to examine any substantive issues with the ALJ's opinion.  *See* Dkt. No. 22 at 1-5.  Rather, Plaintiff raises hypothetical discrimination without any evidence of actual or possible discrimination.  *Id*.  At the hearing, the ALJ asked Plaintiff if he lived with anyone.  Tr. at 54.  Plaintiff asserts that, "[b]y asking me who I live with, [she] is asking me what my lifestyle

is.  If [the] answer was a man, what would have been her next question.  If I was in a relationship I would have totally been outed."  Dkt. No. 22 at 5.

Despite Plaintiff's *pro se* status, the Court will not entertain the many possibilities that could have resulted from the any number of possible answers to the any number of questions that Plaintiff could have given at the hearing.  Plaintiff does not assert that he was living with a man, that he was outed during the hearing, or that the ALJ did in fact discriminate against him.  Additionally, Plaintiff has not brought a claim against the ALJ or the Commissioner for discrimination.  *See* Dkt. No. 1.  Rather, Plaintiff seeks review of the ALJ's denial of benefits, which the Court will examine for substantial evidence.  *See Shaw*, 221 F.3d at 131.

Despite Plaintiff's claims that the question posed was discriminatory in nature, questions regarding a claimant's living situation are routinely asked during hearings before the ALJ.  In making his or her determination, the ALJ is required to consider, among other things, whether the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical evidence.  In making this determination, the ALJ must necessarily consider the claimant's credibility.  Additionally, the claimant is typically asked about his or her living situation because whether the claimant lives with anyone else is typically relevant to the claimant's daily activities and ability to provide self-care.  *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii); *see also Walker v. Astrue*, 881 F. Supp. 2d 446, 451 (W.D.N.Y. 2012) (discussing the claimant's productive daily activities, which included caring for her school-aged daughter, in finding that the ALJ's RFC determination was supported by substantial evidence).  In short, nothing about the ALJ's question regarding whether Plaintiff lived with anyone else was discriminatory in nature

and the Court rejects Plaintiff's conclusory allegations.

The ALJ's decision is supported by substantial evidence. Despite determining that Plaintiff suffered from post-traumatic lumbosacral DDD with a herniated disc and radiculopathy, which could reasonably cause Plaintiff's symptoms, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. at 17, 20.

While Plaintiff testified that his back pain prohibited him from working as he could not sit or stand for more than fifteen minutes, and could only lift a maximum of twenty pounds, Plaintiff's medical records demonstrate that Plaintiff had completely normal examinations just days after his injury. *Id*. at 55-57, 209-11, 213-15. Notably, Plaintiff never reported that he injured himself at work when he went to the emergency room days later. *See id*. at 209, 213. Rather, Plaintiff reported that he did not experience any recent trauma. *Id*.

Further, Plaintiff's medical records are replete with inconsistencies and unsubstantiated findings. As detailed below, despite Plaintiff continually reporting that his pain levels were low and his symptoms were improving, his physicians reported that he could not work and that he was completely disabled.

On September 14, 2015, Plaintiff was seen by SOS. *Id*. at 241-43. Ms. Cullinan recorded that Plaintiff was in great discomfort and requested the use of a wheel chair. *Id*. at 241. While Plaintiff had difficulty moving from the seated to standing positions due to low back pain, he had normal sensation and his range of motion was only moderately limited. *Id*. at 243. Ms. Cullinan opined that Plaintiff was suffering from a herniated disc on his right side and ordered an MRI. *Id*.

Ms. Cullinan refilled Plaintiff's pain prescription he received during his emergency room visits and marked his percentage of temporary disability as one hundred percent. *Id*.

On September 18, 2015, Plaintiff reported to SOS again and reported increased pain that worsened at night. *Id*. at 246-48. Ms. Cullinan again noted that Plaintiff had a one hundred percent partial disability but noted that she was not willing to continue increasing his dose of narcotics. *Id*. at 248.

On October 2, 2015, Plaintiff was seen by Dr. Haher at SOS. *Id*. at 251-54. Dr. Haher explained the results of Plaintiff's September 22, 2015 MRI, which revealed a small herniated disc at L5-S1. *Id*. at 253. Dr. Haher noted that Plaintiff's gait was unsteady, he was limping on his left side, but that his pain levels were moderate. *Id*. Dr. Haher prescribed Plaintiff more narcotics for pain relief and noted that Plaintiff had begun injections the day before. *Id*. Plaintiff was told not to work and follow up in one month. *Id*.

Just two months after Plaintiff's alleged onset date, on November 6, 2015, Plaintiff reported to Nurse Practitioner Caroline Berrios that his pain was a two out of ten and it averaged a five out of ten. *Id*. at 349. Ms. Berrios also reported that Plaintiff had experienced between seventy to eighty percent relief in pain, which allowed for increased activity, including walking, standing, and sitting. *Id*. at 350. Plaintiff had a relatively normal examination but Ms. Berrios rated his disability at one hundred percent. *Id*. at 352.

On November 11, 2015, Plaintiff reported to Dr. Haher that, although his back and leg pain persisted, physical therapy was helping and he wished to continue it. *Id*. at 273.

On December 21, 2015, Ms. Cullinan reported that physical therapy was helping, that Plaintiff's gait was normal, and he was only in mild pain. *Id*. at 279-81. Despite not noting any limitations in Plaintiff's physical abilities, Ms. Cullinan reported that Plaintiff had a temporary disability percentage of one hundred percent. *Id*. at 281. Dr. Haher's examination notes on March 25, 2016 report identical findings. *Id*. at 284-86.

On June 14, 2016, Plaintiff visited SOS again and was limping and complaining of pain. *Id*. at 289-91. Dr. Haher noted that message therapy was helpful but that Plaintiff did not continue. *Id*. at 289. Dr. Haher discussed Plaintiff's option for surgery. *Id*. at 291. On November 11, 2016, Plaintiff reported to SOS requesting a refill of tramadol despite noting that massage therapy was working and that his symptoms were improving. *Id*. at 294. Plaintiff rated his pain severity at a three. *Id*. On October 10, 2016, Plaintiff reported that he had experienced greater than eighty percent improvement in pain and function. *Id*. at 299.

On February 8, 2016, Plaintiff again reported that his pain level was a two out of ten and averaged at five out of ten. *Id*. at 303. Ms. Berrios also reported that Plaintiff experienced between seventy to eighty percent relief in pain, which allowed for increased activity, including walking, standing, and sitting. *Id*. at 303. Ms. Berrios also noted that Plaintiff did not appear to be in any distress. *Id*. at 304.

On March 25, 2016, Ms. Cullinan reported that while Plaintiff appeared to be in mild pain, he had normal coordination and a normal gate. *Id*. at 313. Despite a normal examination, Ms. Cullinan reported that Plaintiff had a temporary disability percentage of one hundred percent. *Id*.

On April 6, 2016, while Plaintiff reported that his pain was constant, he also stated that sometimes he does not experience any pain at all.  *See id.* at 455.

On June 22, 2016, Dr. Gregory Shankman conducted an examination of Plaintiff.  *Id.* at 220-24.  Dr. Shankman reported that Plaintiff had good sensation to light touch and pinprick, good strength in all muscle groups, no point tenderness, a negative straight leg test on the right leg and a positive on the left.  *Id.* at 223.  Dr. Shankman opined that Plaintiff could lift and carry up to twenty-five pounds.  *Id.*  Finally, Dr. Shankman reported that Plaintiff could perform light work and had a moderate partial disability of fifty percent.  *Id.*  Thus, at only nine months into the relevant period, Plaintiff was capable of working again.

On October 6, 2016, Dr. Shankman examined Plaintiff again.  *Id.* at 226-28.  Dr. Shankman reported relatively identical results.  *Id.*  On June 17, 2016, despite Plaintiff complaining of pain when increasing his range of motion, he had full strength and could get on and off the exam table without assistance.  *Id.* at 322.  Plaintiff was advised to increase his physical activities.  *Id.* at 323.  On August 24, 2016, Plaintiff reported "I feel great after each massage" and that it was reducing his overall pain.  *Id.* at 332.  Plaintiff also reported that his pain has reduced a lot and he feels able to do more.  *Id.*  Plaintiff reported similar progress on September 6, 2016.  *Id.* at 334.

On February 8, 2017, Dr. Kalyani Ganesh examined Plaintiff.  *Id.* at 461-63.  Dr. Ganesh noted that Plaintiff appeared to be in no acute distress, had a normal gait and stance.  *Id.* at 462.  Plaintiff did not need help getting on and off the exam table and could rise from a chair without difficulty.  *Id.*  Plaintiff had full flexion, extension, and rotary movement in his cervical spine.  *Id.*

Plaintiff's lumbar spine had a flexion of sixty degrees, extension of fifteen degrees, lateral flexion and rotation of ten degrees. *Id.* Dr. Ganesh opined that Plaintiff had no limitations sitting, standing, and walking, but moderate limitations in lifting, carrying, pushing, and pulling. *Id.*

On February 20, 2017, Plaintiff's temporary disability percentage was lowered to seventy-five percent, despite there being almost no change in his examination. *Id.* at 469-71. On May 10, 2017, the New York Spine and Wellness Center lowered Plaintiff's temporary impairment to fifty percent. *Id.* at 475, 477, 484.

At the ALJ hearing, the ALJ noted that Plaintiff had begun working again in 2017. *Id.* at 45. Plaintiff's counsel acknowledged this and stated that Plaintiff would be seeking a closed period from September 4, 2015 to July 7, 2017. *Id.* The ALJ noted in her opinion that Plaintiff never made a formal request. *Id.* at 15. The ALJ declined to close the period and held that Plaintiff failed to prove that he suffered from an impairment expected to last greater than twelve months.[1] *Id.*

The ALJ held that Plaintiff could perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). Light work is defined as

---

[1] "A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability." *Milliken v. Saul*, No. 19 CIV. 09371, 2021 WL 1030606, *9 (S.D.N.Y. Mar. 17, 2021) (citing *Smith v. Berryhill*, Case No. 17 Civ. 5639, 2018 WL 5619977, *12 (S.D.N.Y. Aug. 10, 2018)). "Where a claimant is found to be disabled, the Commissioner may find that he or she is no longer disabled from a later date where substantial evidence of 'medical improvement' supports the conclusion that the claimant has become able to work." *Id.* (citing *Ritchie v. Saul*, No. 19 Civ. 1378, 2020 WL 5819552, *11 (S.D.N.Y. Sept. 29, 2020)). While not addressed by the parties, the ALJ determined that Plaintiff failed to establish a disability lasting at least twelve months. Tr. at 15. As the period Plaintiff requested was larger than the time period the ALJ found Plaintiff was no longer disabled, the Court will not examine whether Plaintiff was entitled to a closed period.

> [W]ork [that] involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities.  If someone can do
> light work, we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.  Given that the medical records support that Plaintiff could sit, stand, and walk for long periods, and that Plaintiff could lift up to twenty pounds and frequently ten pounds, the ALJ's RFC determination is supported by substantial evidence.  Tr. at 223, 303, 461-63.  Also, Plaintiff has not proven that he has any significant limitations in pushing or pulling.  *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (holding that a plaintiff has the burden of establishing a diminished RFC).

While there is evidence demonstrating disability on behalf of Plaintiff, such is insufficient to warrant remand.  *See Bonet v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision").  Further, the evidence supporting Plaintiff's view was often contradictory and not supported by the examinations.  For example, Plaintiff's providers would note that Plaintiff was one hundred percent disabled despite relatively normal examinations.  Tr. at 279-81, 313, 352.  The ALJ was at liberty to resolve these conflicts and reject the contradictory evidence.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  Moreover, the determinations that Plaintiff was disabled were reserved to the

commissioner and thus, such determinations are not given any significant weight.  20 C.F.R. §
404.1527(d)(1).

Finally, the Court notes that Plaintiff has attached additional medical records to his
complaint.  Dkt. No. 1.  A plaintiff may present additional, new, material evidence to the district
court where he provides a showing of good cause for why the evidence was not presented earlier.
*See Fonseca v. Chater*, 141 F.3d 1151 (2d Cir. 1998) (quoting *Lisa v. Secretary of Health &
Human Servs*., 940 F.2d 40, 43 (2d Cir. 1991)).  "[M]ateriality requires 'a reasonable possibility
that the new evidence would have influenced the Secretary to decide claimant's application
differently.'. . .  'New' evidence is that which adds to the record and is 'not merely cumulative.'"
*Id*. (quoting *Lisa*, 940 F.2d at 43).  "Good cause is met when 'the evidence surfaces after the
[Commissioner's] final decision and the claimant could not have obtained the evidence during the
pendency of that proceeding.'"  *Id*. (quoting *Lisa*, 940 F.2d at 44) (alterations in original).

Of the about thirty pages of additional medical records, the vast majority of pages are
simply reminders to Plaintiff of upcoming appointments.  Dkt. No. 1 at 9, 12, 14, 16, 18, 19-21,
30, 33, 35, 37, 39-42.  This evidence is not new or material but only bald, redundant material that
supports that Plaintiff had a doctor's visit, which the Court already knows from the medical
records detailing the visits.  The additional evidence is primarily composed of Plaintiff's
discharged instructions.  *Id*. at 10-11, 13, 14, 17, 31-32, 34, 36, 38.  These instructions explain to
Plaintiff that he should rest, apply heat and ice to his injury, and inform of possible side effects of
treatment and his injury.  *Id*.  There is not a reasonable possibility that the new evidence would

have influenced the Secretary to decide Plaintiff's application differently and they are therefore not material.

Finally, the remaining pieces of evidence are electronic health records from SOS. *Id*. at 23-25, 27, 28-29. They simply state Plaintiff's identifying information, insurance information, that Plaintiff was seen in the office, and he continues not to work. *Id*. Two records note that Plaintiff has a percentage of temporary disability of one hundred percent. *Id*. at 24, 29. Again none of this information is new as all the information contained in these notes was in the record.

Further, none of this is material. While Plaintiff has literally highlighted the findings that he had a percentage of temporary disability of one hundred percent, a determination as to whether he is disabled is left to the commissioner. 20 C.F.R. § 404.1527(d)(1). Therefore, the Court declines to consider the additional medical evidence Plaintiff has presented as none of it is new or material. Plaintiff has also failed to establish good cause for his failure to give this evidence to the ALJ when he was represented by counsel.

Having determined that Plaintiff could perform a full range of light work, the ALJ determined that Plaintiff was not disabled. At step five, the ALJ found that, while Plaintiff could not perform his past work, there were jobs in the national economy in significant numbers that he could perform. Tr. at 21. As the ALJ did not find any exertional limitations, it was appropriate for her to find that significant jobs in the national economy existed that Plaintiff could perform. *Crews v. Astrue*, No. 10 CIV. 5160, 2012 WL 1107685, *18 (S.D.N.Y. Mar. 27, 2012) (citing *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); *Gilmore v. Comm'r of Soc. Sec.*, No. 09 CIV. 6241, 2011 WL 609886, *12 (S.D.N.Y. Jan. 28, 2011) (citation omitted).

The ALJ's opinion is supported by substantial evidence.  The Court therefore affirms.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 14, 2021
          Albany, New York

Mae A. D'Agostino
U.S. District Judge